CORN EXCHANGE BANK TRUST COMPANY, Respondent, *v.* EMERLINA PASTORE et al., Appellants.

Supreme Court, Appellate Term, First Department, May 7, 1953.

*Irving M. Berry* for appellants.

*John J. Sullivan* for respondent.

EDER, J. (dissenting). Defendants appeal from an order which denied their motion to vacate and set aside a warrant of attachment issued against them.

Plaintiff instituted this action to recover upon two causes of action. The first cause of action is predicated on the claim that plaintiff's paying teller by mistake paid out to defendants, pursuant to a check that was drawn on that bank, the sum of $4,039.80 instead of the sum of $2,239.80, and that defendants knew at the time that the paying teller had mistakenly overpaid $1,800 and retained the same without notifying him of his error

and that in reliance upon their failure to advise him of such overpayment he permitted them to leave the bank's premises with the money in their possession.

The second cause of action is based on the theory of a conversion.

The first cause of action is obviously predicated on an implied contract, viz., where money is paid by mistake the law implies a contract on the part of the party who has benefited thereby to reimburse the party who has suffered the loss.

In order to obtain the warrant of attachment under the first cause of action it was incumbent upon the plaintiff to establish that defendants were guilty of a fraud in contracting or incurring the liability, which would bring the right to an attachment under subdivision 6 of section 903 of the Civil Practice Act which authorizes an attachment in an action upon contract, express or implied, and where the defendant has been guilty of a fraud in contracting or incurring the liability.

It is to be observed in the instant case that there was no actual, literal, affirmative misrepresentation by the defendants which induced the plaintiff's paying teller to make this overpayment. According to the complaint and the affidavit, when the check was presented for payment at the teller's window he proceeded to count out the amount of the check and counted out what he thought to be $2,239.80, which he says he placed in an envelope and thereupon instructed the defendants to take the envelope into a private room in the bank and to count out the money and to notify him immediately if there was any error. His affidavit in support of the attachment states that defendants took the envelope and, accompanied by a Miss Aitken, who had identified them to him, went into an adjoining room and counted the money in the presence of Miss Aitken and defendants then left the bank without reporting back to him and this led him to believe that the cash he had given them was correct. It subsequently developed that there was a shortage of $1,800, and after an examination it was found that the paying teller had given the defendants twenty $100 bills instead of twenty $10 bills.

Thus it is seen that there was no affirmative misrepresentation made by the defendants in the sense of an actual physical statement to this paying teller that he had given them the correct cash for the amount of the check. Rather, the situation as to a misrepresentation is predicated on the premise that by silence and concealment defendants accomplished the same result as if they had made an affirmative misrepresentation and

misstatement to the paying teller and upon which he relied. This course of conduct on the part of the defendants is regarded, in law, as an affirmative misrepresentation upon which the paying teller relied. This rule of law, though it may sound contradictory, is definitely settled by *Nasaba Corp.* v. *Harfred Realty Corp.* (287 N. Y. 290, 295), where the court said: " An intent and design is alleged or clearly and necessarily inferable from the complaint to misrepresent or conceal a material fact, to produce a false impression in order to mislead the plaintiff or to cheat it and therein lies the deceit which is the material constituent of actual fraud * * *. It is not claimed that affirmative and false representations were made with intent to cheat and defraud plaintiff upon reliance on which plaintiff was injured. The defendants are charged with fraudulent acts which they kept secret and concealed from plaintiff to its detriment and loss with intent that plaintiff should be misled. Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact.''

If this were all there was to the appeal, I should unhesitatingly vote to affirm the order denying the motion to vacate the attachment.

The complaint, however, contains a cause of action in fraud, for a tortious wrong, namely, the second cause of action which charges a conversion. This cause of action which is incorporated into and made a part of the complaint is specifically referred to in the affidavit of William Ahrens, who was the paying teller who paid out the cash on this check, and his affidavit, upon which the warrant of attachment issued, specifically refers to the complaint which is made a part of the affidavit by his very reference to the complaint.

The learned court below recognized the rule of law that all causes of action on which a warrant of attachment is issued must be to recover a sum of money only or the right to attachment is lost, and in doing so, referred to the case of *Brown* v. *Chaminade Velours* (176 Misc. 238, affd. 261 App. Div. 1071). The court below, in its opinion, stated: " The first count of the complaint states a cause of action upon an implied contract and with sufficient facts to warrant the inference that the defendants have ' been guilty of a fraud in * * * incurring the liability ' * * *. The second count is predicated upon an alleged conversion and thus does not support a warrant of attachment, being wholly without the purview of section 903 of the Civil Practice Act.''

The court then referred to the *Brown* case as announcing that rule of law.

In a commendable endeavor to aid and assist the plaintiff in sustaining the warrant of attachment the learned court below made the ruling that the affidavit upon which the warrant of attachment was based made no reference to the complaint and therefore felt that the court could grant the motion to vacate the warrant of attachment unless the plaintiff filed a consent to eliminate the second cause of action. The plaintiff, of course, filed such a consent, but that is beside the point. The question of concern is whether the court below had the power to make such a disposition. In my opinion, the learned court below erred for two reasons, namely, first, the affidavit upon which the warrant of attachment was based does make reference to the complaint, specifically so, as appears in the affidavit of Mr. Ahrens; secondly, I know of no decision formulated by any court of recognized authority which supports the procedure resorted to at Special Term, nor did the learned Judge refer to any authority which authorized such a rule of decision, and, it is to be noted, too, that the respondent's brief fails to support this view.

It seems to me, unfortunate as it may be, that there is no escape. The affidavit in support of the warrant of attachment and the complaint referred to causes of action which are inconsistent with the right to obtain a warrant of attachment, and, therefore, the motion to vacate the warrant of attachment should have been granted.

Much as I dislike to do so, I am constrained, for the reasons stated, to vote for reversal.

Accordingly, I vote to reverse and to grant the motion to vacate the warrant of attachment.

HAMMER and HOFSTADTER, JJ., concur in decision; EDER, J., dissents in opinion.

Order affirmed.